Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico | |
| Recurrido | Certiorari |
| v. | 2011 TSPR 2 |
| En Interés de la Menor C.Y.C.G. | 180 DPR ____ |
| Peticionaria | |

Número del Caso: CC-2007-681

Fecha: 5 de enero de 2011

Tribunal de Apelaciones:

Región Judicial de Caguas

Panel integrado por su presidenta la Juez Pesante Martínez, el Juez Escribano Medina y la Juez Hernández Torres

Abogada de la Parte Peticionaria:

Lcda. Ana Rosa Montes Arraiza

Oficina del Procurador General:

Lcdo. Salvador Antonetti Stutts
Procurador General

Lcda. Marta E. Ortiz Camacho
Procuradora General Auxiliar

Materia: Art. 193 del Código Penal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

     v.                           CC-2007-681        Certiorari

En Interés de la Menor
C.Y.C.G.

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 5 de enero de 2011.

El recurso que tenemos ante nuestra consideración nos brinda la oportunidad de determinar si el padre, la madre, el tutor o encargado de una menor que enfrenta un procedimiento bajo la Ley de Menores de Puerto Rico puede comparecer a acompañarla, como requiere la referida ley, a pesar de ser uno de los testigos de cargo contra la propia menor.

Por las razones que exponemos más adelante, contestamos tal interrogante en la negativa. Pasemos, pues, a exponer los hechos que dieron origen a la controversia planteada en el caso de epígrafe.

I

Por hechos alegadamente ocurridos el 16 de diciembre de 2006, el 20 de diciembre de ese mismo año se presentó una queja contra la menor C.Y.C.G. en el Tribunal de Primera Instancia, Sala Superior de Caguas, Asuntos de Menores. A esta menor se le imputó haberse apropiado ilegalmente de ropa, cartera, zapatos y accesorios pertenecientes a su vecina Verónica Sánchez Ortiz, todo ello con un valor aproximado de $2,000.00. Así, pues, la falta imputada fue por apropiación ilegal agravada en su clasificación de delito grave de tercer grado, según lo establece el Código Penal de Puerto Rico para la apropiación de bienes cuyo valor es de $1,000.00 ó más.[1] Al pie de la queja-querella presentada contra la menor se incluyó una lista de cuatro testigos de cargo, de los cuales la segunda era la Sra. Carmen J. Guadalupe Delgado, madre de la menor.

De acuerdo con los escritos de ambas partes, la madre de la menor prestó una declaración jurada sobre los hechos y en ésta expuso que ella fue quien alertó a la perjudicada Verónica Sánchez sobre la acción de la menor y acudió junto a la perjudicada al cuartel de la Policía para presentar la queja contra su propia hija.[2]

---

[1] Art. 193 del Código Penal de Puerto Rico de 2004, Ley Núm. 149 de 18 de junio de 2004, 33 L.P.R.A. sec. 4821.

[2] Refiérase a la Petición de *certiorari*, pág. 2, y al Alegato del Procurador General, págs. 1-2.

El mismo día en que se presentó la queja también se celebró la vista de aprehensión contra la menor. Según consta del expediente, la menor estuvo acompañada únicamente por su madre y allí se le hicieron las advertencias legales correspondientes. A pesar de que, como señalamos, de la propia faz de la queja -entre la corta lista de testigos de cargo- surgía claramente el nombre de la madre de la menor, ni el Ministerio Público -representado por la Procuradora de Menores- solicitó ni el tribunal *motu proprio* ordenó la comparecencia de un defensor judicial para que velara por los mejores intereses y el bienestar de la menor en el procedimiento. A base de los testimonios bajo juramento del agente investigador y de la alegada perjudicada, el tribunal de instancia determinó causa probable por la falta imputada, dejando a la menor bajo la custodia de su madre para los procedimientos subsiguientes.

Llegado el día de la vista de determinación de causa probable para presentar querella, la menor compareció al tribunal acompañada por su madre y la Lcda. Belisa Rosa Solá de la Sociedad para la Asistencia Legal (SAL), siendo ese el último día de los términos. En esa vista, la Procuradora de Menores, la Lcda. Aida Cruz Oquendo, indicó que su primer testigo sería la madre de la menor.

Ante tal anuncio, la representante legal de la menor se opuso al indicar que la madre había sido quien había acompañado a la menor a la vista de aprehensión y a quien,

a su vez, el tribunal le había delegado la custodia de la menor. Mientras, la Procuradora de Menores expuso que la madre de la menor era una testigo esencial y que no había impedimento para presentarla como testigo de cargo. Entonces, por primera vez, la Procuradora de Menores solicitó que se nombrara un defensor judicial a la menor.

Luego de evaluar los argumentos de las partes, el foro de instancia acogió el planteamiento de la SAL, denegó la petición de nombramiento de un defensor judicial y desestimó finalmente la queja por no haberse cumplido con los términos de juicio rápido, según la Regla 6.2(2) de las Reglas de Procedimiento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A, R.6.2(2).[3] Inconforme con la determinación del foro de instancia, el Procurador General recurrió ante el Tribunal de Apelaciones mediante un escrito de *certiorari*.

En su recurso ante el foro apelativo intermedio, el Procurador General expuso que el tribunal de instancia había errado al privar al Estado de presentar el testimonio de un testigo esencial de cargo y que fue anunciado desde

---

[3] En su dictamen, el Tribunal de Primera Instancia señaló lo siguiente:

Desde el 20 de diciembre de 2006, la señora Carmen Guadalupe ha estado representando los intereses de su hija, generándose entre ambas la confianza necesaria para tomar aquellas decisiones que mejor salvaguardaran los derechos de esta última. Nunca se anunció ni se comentó el interés de considerar a la señora Carmen Guadalupe como testigo de cargo. No es sino hasta el 10 de enero de 2007 que se anuncia la testigo, pretendiéndose dejar desprovista a la menor de continuar, como hasta ese momento, a atender su caso a tenor con lo dispuesto en la Regla 6.2(2) de los Procedimientos para Asuntos de Menores.

el inicio del proceso, ello aunque se tratara de la madre de la menor imputada de falta. Por su parte, la abogada de la menor argumentó, citando la Regla 6.2(2)(d) de las Reglas de Procedimiento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A, R.6.2(2)(d), que la menor tenía derecho a que, desde la vista de aprehensión, se le nombrara y se citara un defensor judicial que velara por su bienestar y sus intereses.[4] Además, señaló que la Procuradora de Menores había actuado de forma negligente al solicitar el nombramiento de un defensor judicial en la misma vista de determinación de causa probable para presentar querella, siendo esa fecha el último día de los términos y a pesar de que "tenía conocimiento del patente conflicto de intereses entre la menor y su madre".[5]

No obstante, el 25 de junio de 2007 el Tribunal de Apelaciones expidió el auto de *certiorari*, revocó la decisión del tribunal de instancia y ordenó la continuación

---

[4] En su contexto, la citada regla dispone lo siguiente:

Regla 6.2. Mociones antes de la vista adjudicativa

Las siguientes mociones deberán presentarse y resolverse antes de la vista adjudicativa:

(1) ...
(2) Moción de desestimación basada en las siguientes defensas y objeciones surgidas en la tramitación del proceso:

(a) ...
(b) ...
(c) ...
(d) que no se determinó causa probable conforme a derecho;

[5] Véase Apéndice de la Petición de *certiorari*, pág. 59.

de los procedimientos en ese foro.[6]  En lo pertinente, el

Tribunal de Apelaciones concluyó lo siguiente en su

dictamen:

> En cuanto a que la menor estuviera
> representada por un adulto o representante
> legal, entendemos que la menor sí estuvo
> adecuadamente representada. En este caso,
> la menor contaba con una representante
> legal, la licenciada Belisa Rosa Solá, y
> además, si fuere necesario se podía asignar
> al padre como adulto en interés del
> bienestar del menor. De igual forma, la
> madre podía servir como testigo de cargo
> toda vez que la menor estaba adecuadamente
> representada.[7]

En desacuerdo con la decisión del Tribunal de

Apelaciones, la parte peticionaria presentó ante esta Curia

un recurso de *certiorari* en el que expone específicamente

que el Tribunal de Apelaciones erró al determinar: (1) que

la menor C.Y.C.G. estuvo adecuadamente representada durante

los procedimientos acaecidos en instancia; y (2) que el

foro de instancia actuó incorrectamente al desestimar la

queja por violación a los términos de juicio rápido.

El 22 de agosto de 2007 paralizamos los

procedimientos ante el tribunal de instancia y expedimos el

auto solicitado. Con el beneficio de la comparecencia de

ambas partes, estamos en posición de resolver la

controversia ante nuestra consideración.

---

[6] Esta decisión fue archivada en autos y notificada el 3 de julio de 2007.

[7] Véase Apéndice de la Petición de *certiorari*, págs. 69-70.

II

A. El origen y desarrollo de los procedimientos de menores
en Puerto Rico

A pesar de que en 1844 el régimen español en la Isla
estableció un Asilo de Beneficencia en el que se recluía a
los delincuentes juveniles, entre otras personas, no fue
hasta el 1902 que se dispuso algo sobre la responsabilidad
penal de los menores, esto mediante el Código Penal de
Puerto Rico de 1902.[8] Específicamente, el Art. 39 exponía
-en lo pertinente- lo siguiente:

> Todas las personas son capaces de cometer
> crímenes, excepto los pertenecientes a las
> siguientes clases:
> (1) Todos los niños menores de siete años;
> y
> (2) Los niños mayores de siete años y
> menores de catorce, cuando no exista prueba
> plena de que al tiempo de cometer el acto de
> que se les acusa, tenían conciencia de su
> maldad.

Mediante ley aprobada el 9 de marzo de 1905 se creó
la Escuela Industrial de Mayagüez, la cual serviría de
institución educativa y correccional para jóvenes
delincuentes.[9] Diez años después, en 1915, se promulgó la
primera ley que instauraba un procedimiento especial para
el tratamiento y procesamiento de los menores en Puerto
Rico: la Ley de Cortes Juveniles, Ley Núm. 37 de 11 de

---

[8] Véanse D. Nevares-Muñiz, Derecho de menores: delincuente juvenil y
menor maltratado, 6ta ed. rev., San Juan, Inst. Desarrollo del Derecho,
2009, Sec. 1.1.1, pág. 3; A. Palau de López, Esbozo de la historia
legal de las instituciones y tribunales de menores de Puerto Rico,
2da ed., Río Piedras, Editorial Universitaria, 1975, págs. 27-28.
Además, refiérase a Pueblo en interés menor A.L.G.V., 170 D.P.R. 987,
994-995 (2007).

[9] Palau de López, op. cit., pág. 30.

marzo de 1915.[10] Más adelante, ésta fue derogada por la Ley de Menores de 1955, Ley Núm. 97 de 23 de junio de 1955, según enmendada. Esta ley instituyó las salas de menores en el sistema judicial de Puerto Rico -también conocidas como Tribunal Tutelar de Menores-, estableció la naturaleza civil del estatuto y fijó la edad máxima para un menor en 18 años.[11]

La Ley de Menores de 1955 respondió a un esquema filosófico paternalista y tutelar que sirvió para atender las necesidades del sistema de justicia juvenil entre mediados de 1955 y principios de 1986. El enfoque principal de esta ley era la rehabilitación del menor delincuente o transgresor. A poco más de tres décadas de promulgada, esta ley se vio debilitada, entre otras razones, por las críticas en cuanto a su inefectividad para lograr el propósito de la rehabilitación. Además, fue enmendada en varias ocasiones, lo que llevó a establecer cambios en su enfoque filosófico.

Con esos aires de cambio, la Legislatura optó por derogar el mencionado estatuto y dar paso a una nueva legislación. Fue en ese momento histórico que se aprobó la Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986, según enmendada, 34 L.P.R.A. sec. 2201 *et seq.* (Ley de Menores).

---

[10] Véase Nevares-Muñiz, op. cit., pág. 3.

[11] Palau de López, op. cit., pág. 55.

B. La Ley de Menores de Puerto Rico

Según se plasma en la Exposición de Motivos de la Ley de Menores, este estatuto "adopta como marco filosófico del Sistema de Justicia Juvenil, el humanismo dentro de un enfoque ecléctico de acción e intervención, donde se compatibilicen la propuesta rehabilitadora y el poder y responsabilidad posible inherente al Estado de brindarle toda oportunidad rehabilitativa, así como exigirle al menor un "quantum" de responsabilidad para dirigir sus actos y responder por éstos".[12] Esta ley es la que rige actualmente nuestro sistema de justicia juvenil, pues regula "los procedimientos investigativos, judiciales y ejecutivos en los casos en que los menores de edad incurren en conducta constitutiva de delito, según tipificada en el Código Penal o en leyes especiales".[13]

La Ley de Menores incorpora los derechos básicos que se han extendido al ámbito juvenil, esto con el fin de garantizar un procedimiento justo, rápido y eficaz sin alterar el carácter especial del proceso.[14] Conforme a lo

---

[12] Exposición de Motivos de la Ley Núm. 88 de 9 de julio de 1986, según enmendada, 34 L.P.R.A. sec. 2201 et seq. (Ley de Menores); Pueblo en interés menores C.L.R. y A.V.L., res. el 17 de febrero de 2010, 2010 T.S.P.R. 20, 178 D.P.R. ____.

[13] Nevares-Muñiz, op. cit., pág. 4.

[14] Véase la Exposición de Motivos de la Ley de Menores. De acuerdo con la profesora Dora Nevares-Muñiz, hay 4 asuntos principales que distinguen la Ley de Menores de 1955 y la actual Ley de Menores. Éstos son: (1) el cambio de enfoque filosófico de uno penal a uno con fines duales: rehabilitación y protección de la sociedad mientras se le garantiza derechos a los menores y se le exige responsabilidad penal por sus actos delictivos, (2) la exclusión de los jóvenes indisciplinados de la jurisdicción del Tribunal de Menores debido a que éstos no han violado leyes penales, (3) la reducción del límite de edad (de 16 a 14 años) para que el Tribunal de Menores renuncie a su autoridad para procesar al menor, y (4) la creación de la figura del

anterior, la Ley de Menores debe interpretarse de acuerdo

con los propósitos siguientes:

> (a) Proveer para el cuidado, protección, desarrollo, habilitación y rehabilitación de los menores y proteger el bienestar de la comunidad.

> (b) Proteger el interés público tratando a los menores como personas necesitadas de supervisión, cuidado y tratamiento, a la vez que se les exige responsabilidad por sus actos.

> (c) Garantizar a todo menor un trato justo, el debido procedimiento de ley y el reconocimiento de sus derechos constitucionales.[15]

De acuerdo con la Ley de Menores, el menor es aquella persona que no ha cumplido los 18 años de edad o que habiéndola cumplido sea llamada a responder por una falta cometida antes de cumplir esa edad.[16] En cuanto a la jurisdicción del tribunal, el estatuto establece que éste tendrá autoridad para atender todo caso en que se impute a un menor una conducta que constituya falta, la cual fuese incurrida antes de que el menor hubiera cumplido los 18 años de edad.[17]

C. Las garantías que cobijan a los menores en los procedimientos judiciales juveniles en Puerto Rico

En la década del 60 el Tribunal Supremo de Estados Unidos emitió dos decisiones de gran trascendencia en el desarrollo de los procedimientos de menores, pues reconoció

---

Procurador de Menores y la delimitación de funciones y responsabilidad de los profesionales de la salud que intervendrán con el menor. Nevares-Muñiz, op. cit., pág. 4.

[15] Art. 2 de la Ley de Menores, 34 L.P.R.A. sec. 2202.

[16] Art. 3, inciso (o), de la Ley de Menores, 34 L.P.R.A. sec. 2203(o).

[17] Art. 4 de la Ley de Menores, 34 L.P.R.A. sec. 2204.

mayores garantías a los menores imputados de faltas. Uno de esos casos fue Kent v. United States, 383 U.S. 541 (1966) y el otro In re Gault, 387 U.S. 1 (1967).[18]

En In re Gault, *supra*, el Tribunal Supremo federal dejó claro que las reglas del debido proceso de ley enunciadas en la Enmienda Decimocuarta de la Constitución[19] federal aplican en todo procedimiento celebrado ante los tribunales de menores cuando ese proceso pueda culminar en la privación de la libertad del menor.[20] En ese caso el Tribunal discutió los siguientes derechos como requisitos del debido procedimiento de ley en los casos de menores: (1) notificación de la falta que se le imputa al menor, (2) asistencia de abogado, (3) confrontación o careo con los testigos de cargo, (4) guardar silencio y no autoincriminarse, (5) acceso a la transcripción de los récords del procedimiento, y (6) revisión apelativa.

En Puerto Rico, desde ELA en interés R.M.R., 83 D.P.R. 242, 248 (1961), este Foro ha dejado claro que el menor al que se le impute conducta constitutiva de delito puede reclamar aquellas garantías constitucionales que le

---

[18] La Opinión de Kent v. United States, 383 U.S. 541 (1966), trata sobre ciertos errores cometidos en el proceso de renuncia de jurisdicción. Allí se resolvió que en ese proceso el menor tendrá derecho a una vista para que muestre causa por la cual el tribunal no debe renunciar su jurisdicción, derecho a representación legal, derecho a que su abogado pueda examinar el expediente judicial y social del caso, y derecho a que la resolución mediante la cual se traslade el caso al trámite ordinario de adultos incluya los fundamentos del juez para la renuncia de jurisdicción.

[19] Emda. XIV, Const. EE.UU., L.P.R.A., Tomo 1, ed. 2008.

[20] G. Lassa Díaz, Los casos Kent y Gault y el debido procedimiento de ley en los tribunales de menores, 29 Rev. C. Abo. P.R. 637, 666 (1969).

aseguren un trato justo y un debido procedimiento de ley.[21] Así lo resolvimos bajo el esquema paternalista y tutelar de la Ley de Menores de 1955, y lo ratificamos al amparo del enfoque ecléctico de acción e intervención de la actual Ley de Menores.[22] Claro está, el ejercicio de un derecho por parte de un menor presupone que éste ha sido informado de tal derecho de manera previa, adecuada y oportuna.[23]

El derecho al debido proceso de ley, consagrado en la Enmienda Decimocuarta de la Constitución federal y en la Sec. 7 de la Carta de Derechos de la Constitución de Puerto Rico,[24] cobija tanto al adulto como al menor imputado de falta. Este derecho constitucional de tanta relevancia constituye, como expresamos en Pueblo v. Román Mártir, 169 D.P.R. 809, 822 (2007), la garantía fundamental de protección que tiene un ciudadano contra los posibles abusos o usos arbitrarios de poder que cometa el Estado. Además, representa la máxima garantía de la aspirada justicia plena e imparcial. Íd.

Algunas de las garantías que se han reconocido a los menores imputados de conducta constitutiva de delito se encuentran pautadas en la Ley de Menores y en las Reglas de Procedimiento para Asuntos de Menores. Así, pues, hallamos

---

[21] Pueblo en interés menor G.R.S., 149 D.P.R. 1, 11 (1999).

[22] Pueblo en interés menor R.G.G., 123 D.P.R. 443, 456-457 (1989).

[23] Pueblo en interés menor F.R.F., 133 D.P.R. 172, 183 (1993).

[24] Art. II, Sec. 7 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008.

el derecho a representación legal,[25] la protección contra registros y allanamientos irrazonables,[26] y la protección contra arrestos sin orden.[27] Además, mediante jurisprudencia hemos extendido a los menores ciertas salvaguardas que protegen a los adultos en el proceso criminal, entre ellas el derecho a juicio rápido,[28] la garantía constitucional contra la autoincriminación,[29] el derecho a rebatir la prueba presentada por el Estado[30] y el derecho a confrontar los testigos de cargo en los procesos en su contra y obtener copia de las declaraciones juradas de los testigos que hayan declarado en la vista de determinación de causa probable para radicar la querella.[31] No obstante el reconocimiento de las mencionadas garantías en los procedimientos de menores, la Legislatura excluyó de forma expresa los derechos de fianza, juicio público y juicio por jurado dado el carácter rehabilitador y confidencial de los procesos al amparo de la Ley de Menores.[32]

---

[25] Véase el Art. 6 de la Ley de Menores, 34 L.P.R.A. sec. 2206.

[26] Refiérase al Art. 7 de la Ley de Menores, 34 L.P.R.A. sec. 2207.

[27] Véase la Regla 2.4 de las Reglas de Procedimiento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A, R. 2.4.

[28] Pueblo en interés menor R.G.G., supra.

[29] Pueblo en interés menor R.H.M., 126 D.P.R. 404 (1990).

[30] Íd.

[31] Pueblo en interés menores A.L.R.G. y F.R.G., 132 D.P.R. 990 (1993).

[32] Pueblo v. Suárez, 163 D.P.R. 460, 467 (2004).

D. Los procedimientos judiciales de menores en Puerto Rico

En varias ocasiones hemos expresado que los procedimientos de menores son procesos de carácter civil sui géneris y no se consideran de naturaleza criminal.[33] No obstante, aun cuando tales procedimientos continúan siendo sui géneris, éstos han adquirido matices de naturaleza punitiva que van más allá del propósito rehabilitador y paternalista de la antigua ley.[34]

Debido al factor que constituye el actual carácter adversativo de los procesos judiciales juveniles, así como el aumento en el reconocimiento de más derechos constitucionales aplicables a los menores, se ha exigido un grado mayor de formalidad en tales procesos, ello sin cambiar la naturaleza especial de éstos.[35] Los mencionados dos factores se unen al hecho de que los menores imputados están sujetos, como los adultos, a la posible reclusión en una institución disciplinaria y, por tanto, a la privación de su libertad. Pueblo en interés menor G.R.S., 149 D.P.R. 1, 13 (1999). Ante esta realidad, nuestro ordenamiento jurídico juvenil levanta como bandera el principio de rehabilitación en el que está predicado y reafirma que nadie será privado de su libertad sin el debido proceso de ley. Íd.

---

[33] Véanse Pueblo en interés menor A.L.G.V., 170 D.P.R. 987, 996 (2007); Pueblo v. Suárez, 167 D.P.R. 850, 857 (2006); Pueblo en interés menor G.R.S., supra, pág. 10; Pueblo v. J.L.D.R., 114 D.P.R 497, 502 (1983).

[34] Pueblo v. Suárez, supra, pág. 857; Pueblo en interés menor G.R.S., supra, págs. 11-12; Pueblo en interés menor R.G.G., supra, pág. 460.

[35] Pueblo en interés menores C.L.R. y A.V.L., supra.

En nuestro ordenamiento jurídico, los procedimientos judiciales de menores se rigen tanto por las disposiciones de la Ley de Menores como por las Reglas de Procedimiento para Asuntos de Menores,[36] las cuales fueron adoptadas por este Foro en 1987. En conjunto, ambas fuentes de derecho crean el esquema jurídico que se sigue en los procedimientos de menores. Específicamente, la profesora Dora Nevares-Muñiz nos señala que las etapas principales del proceso son las siguientes: (1) la investigación, (2) la aprehensión, (3) la determinación de causa probable para radicar querella, (4) la presentación de mociones anteriores a la vista adjudicativa, (5) la vista adjudicativa, y (6) la vista dispositiva.[37]

En particular, los procedimientos anteriores a la vista de adjudicación se rigen por la Ley de Menores y las Reglas 2.1 a 2.17 de las Reglas de Procedimiento para Asuntos de Menores. Entre estas reglas se establecen asuntos acerca de: (a) qué funcionarios podrán realizar la aprehensión del menor (Regla 2.1), (b) cómo se expedirá una orden de aprehensión y quién puede dictarla (Regla 2.2), (c) cuáles son los requisitos de la orden de aprehensión (Regla 2.3), (d) en cuáles circunstancias se podrá realizar una aprehensión sin orden judicial previa (Regla 2.4), (e) cómo se efectúa una aprehensión de un menor (Regla 2.5), (f) a quiénes deberá informar el funcionario que

---

[36] Véase Ley Núm. 33 de 19 de junio de 1987, 34 L.P.R.A. Ap. I-A.

[37] Véase Nevares-Muñiz, op. cit., págs. 15-16.

efectúe la aprehensión del menor (Regla 2.6), (g) cuáles advertencias deberá informar el funcionario que realice la aprehensión (Regla 2.7), (h) quiénes podrán expedir una citación al menor y cuáles son los requisitos de ésta (Regla 2.8), (i) cuál es el procedimiento que se realiza luego de la aprehensión del menor (Regla 2.9), (j) cuál es el procedimiento durante la vista de determinación de causa probable para radicar querella (Regla 2.10), (k) qué ocurre cuando el juez determina causa probable para radicar querella y qué ocurre cuando determina lo contrario (Regla 2.11), entre otros.

Entre las figuras que participan en los procedimientos de menores encontramos al representante legal, los padres, tutores o encargados del menor y el defensor judicial.[38] En cuanto a la representación legal, el Art. 6 de la Ley de Menores, 34 L.P.R.A. sec. 2206, establece que "[e]n todo procedimiento el menor tendrá derecho a estar representado por abogado y, de carecer de medios económicos, el tribunal deberá asignarle uno". Ya hemos reconocido que los menores tienen el derecho a estar representados por abogado en todas las etapas críticas de los procedimientos, incluso en la etapa investigativa.[39] Así lo reiteramos en <u>Pueblo v. Medina Hernández</u>, 158 D.P.R.

---

[38] Véase Nevares-Muñiz, <u>op. cit.</u>, págs. 16-20.

[39] <u>Pueblo <i>ex rel.</i> F.B.M.,</u> 112 D.P.R. 250, 253 (1982).

489, 505 (2003), al citar con aprobación la norma pautada

en In re Gault, *supra*:

> … la cláusula de debido proceso de ley de la enmienda
> decimocuarta exige que en los procedimientos
> determinantes de delincuencia que puedan resultar en
> envío a una institución donde se limite la libertad de
> un menor, éste y sus padres deben ser notificados del
> derecho del menor a ser representado por un abogado
> contratado por ellos o, de no tener medios económicos
> para hacerlo, a que se nombre un abogado para tal fin.
> (Énfasis omitido.)

Además, el Art. 11 de la Ley de Menores, 34 L.P.R.A.

sec. 2211, exige la presencia de un abogado en el momento

en que el menor renuncie a cualquier derecho

constitucional, excepto para renunciar al derecho de

asistencia legal.[40]

Por su parte y como una exigencia claramente distinta

al derecho a representación legal, el Art. 37, inciso (g),

de la Ley de Menores, 34 L.P.R.A. sec. 2237(g), establece

lo siguiente:

> En **todo procedimiento** al amparo de este
> capítulo el menor deberá comparecer
> acompañado de sus padres, tutor, encargado o
> en su defecto, del defensor judicial. Se
> notificará de toda citación, resolución u
> orden a los padres, tutor o encargado o en
> su defecto, del defensor judicial del menor.
> El tribunal podrá encontrar en desacato e
> imponer la sanción que se establezca por
> ley, a los padres, tutor o encargado del
> menor, que sin justa causa falte a los
> procedimientos previamente citados. Se
> exceptúa de esta norma, los casos en que el
> Estado o cualquiera de sus
> instrumentalidades es el custodio legal de
> dicho menor. (Énfasis suplido.)

---

[40] El Art. 11 de la Ley de Menores, 34 L.P.R.A. sec. 2211, exige asimismo la presencia de los padres o encargados del menor en la renuncia de cualquier derecho constitucional, incluyendo claro está su derecho a representación legal.

Nótese que el texto de este artículo es claro al señalar que el menor deberá estar acompañado de sus padres, tutor o encargado en todo procedimiento. Esto es, desde la etapa investigativa, si es que el menor es un sospechoso, hasta el momento en que tiene que comparecer ante la presencia del juez. Así también se implica claramente en las Reglas 2.7 (Advertencias al menor y a sus padres) y 2.8 (Citación; forma y requisitos) de las Reglas de Procedimiento para Asuntos de Menores. El requisito de que el menor se encuentre acompañado por sus padres, tutor, encargado o defensor judicial cumple una función dual: (1) **proteger al menor que con su vulnerabilidad y falta de madurez se enfrenta a las prácticas investigativas de la policía y a los procesos adversativos del Estado,**[41] y (2) cumplir con el deber de ofrecer una adecuada notificación de la queja y de la falta que se imputa al menor, además de los procesos pendientes en su contra.[42] (Énfasis suplido.)

---

[41] Véase O. Oquendo Claudio, Renuncia al privilegio contra la autoincriminación en casos de menores, 72 Rev. Jur. U.P.R. 227, 230 (2003). También refiérase a Haley v. Ohio, 332 U.S. 596, 599-600 (1948).

[42] En Pueblo en interés menor F.R.F., *supra*, pág. 184, resolvimos que "… una adecuada notificación a todas las vistas debe ser dada a los menores y a sus padres o guardianes como parte del debido proceso de ley. El derecho a notificación cumple con el propósito de informar al menor y a sus padres o encargados de la falta que se le imputa al menor, con suficiente antelación para la preparación adecuada de su caso". Véase, además, Pueblo en interés menor E.R.C., 149 D.P.R. 804, 812-813 (1999).

En In re Gault, 387 U.S. 1, 33-34 (1967), el Tribunal Supremo de Estados Unidos ya se había expresado sobre el derecho a una adecuada notificación. Ese foro sostuvo que:

"…it would have to yield to the requirements that the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation. Due process of law requires notice of the sort we have described

Mientras, el inciso (f) del mismo Art. 37 de la Ley de Menores, 34 L.P.R.A. sec. 2237(f), establece de forma clara cuándo procede el nombramiento de un defensor judicial para el menor. El artículo indica lo siguiente:

> Si el menor afectado por cualquier asunto ante el tribunal fuere huérfano y no tuviere tutor ni persona encargada que lo representare o cuando se estimare necesario, el juez procederá a nombrarle un defensor judicial. La designación deberá recaer, si fuere posible, sobre un familiar del menor que haya demostrado interés en su bienestar, y si no lo hubiere, el juez podrá designar a una persona idónea. (Énfasis suplido.)

El defensor judicial es aquel tutor especial nombrado por el tribunal para que represente a un incapacitado o a un menor en un pleito en particular. Este nombramiento surge en virtud del poder de *parens patriae* que ostenta el Estado y que tiene como único y principal objetivo garantizar el bienestar de los menores e incapacitados.[43] Asimismo, hemos señalado que dicho nombramiento constituye una excepción a los derechos y las obligaciones que tienen los padres por ostentar la patria potestad de sus hijos menores no emancipados.[44]

El objetivo de que un padre, tutor, encargado o defensor judicial acompañe al menor en los procedimientos

---

--that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet". (Énfasis omitido.)

[43] Crespo v. Cintrón, 159 D.P.R. 290, 300 (2003).

[44] Íd.

investigativos y judiciales consiste en garantizar que el menor conozca y entienda: (1) los procedimientos que se llevan en su contra, (2) las garantías que le cobijan y (3) las consecuencias jurídicas que podrían resultar de la renuncia de éstas.[45] Lo que busca el sistema de justicia juvenil es que cualquiera de estas figuras (padre, tutor, encargado o defensor judicial) sea realmente un adulto interesado en el bienestar del menor.

En el contexto de una confesión ofrecida por una menor, en Pueblo v. Medina Hernández, *supra*, pautamos que los tribunales deben utilizar el criterio de la "totalidad de las circunstancias" para determinar si el adulto que acompañaba a esa menor durante una confesión ofrecida a las autoridades era un adulto interesado en el bienestar de la menor. Allí apuntamos que el tribunal, entre otras cosas, deberá analizar si existía alguna rivalidad o **conflicto de interés** entre el adulto y el menor imputado, y además deberá evaluar si el adulto interesado tenía la capacidad para comprender la situación por la cual atravesaba el menor para así poder brindarle su consejo. (Énfasis suplido.) Íd., pág. 519.

Por otro lado y como parte del carácter adversativo que se introdujo con la aprobación de la Ley de Menores de 1986, se creó la figura del Procurador para Asuntos de Menores. El Procurador de Menores, conforme lo define el propio estatuto, es un Fiscal Auxiliar del Tribunal de

---

[45] Véase Pueblo ex. rel. F.B.M., *supra*, pág. 253.

Primera Instancia designado exclusivamente para ejercer sus funciones en los asuntos cubiertos por la Ley de Menores. Este funcionario está investido de todas las facultades y deberes propios de su cargo, así como de todas aquellas atribuciones que señala la propia ley, con el objeto de hacer válidos los preceptos y medidas en ella expresados.[46]

Entre las funciones de un Procurador o Procuradora de Menores se encuentra el realizar las diligencias pertinentes, esto es, "los arreglos necesarios para que el juez nombre un tutor o custodio del menor cuando éste no tuviere persona alguna responsable de su custodia legal", así como de ejercer "cualesquiera otras funciones necesarias para el desempeño de su cargo".[47]

III

Luego de exponer el marco jurídico aplicable, procedemos a analizar y discutir únicamente el primero de los errores planteados.[48] Señala la peticionaria que el Tribunal de Apelaciones erró al determinar que la menor C.Y.C.G. estuvo adecuadamente representada durante los procedimientos ocurridos ante el tribunal de primera

---

[46] Art. 3, inciso (p), de la Ley de Menores, 34 L.P.R.A. sec. 2203(p), y Art. 12, inciso (a), de la Ley de Menores, 34 L.P.R.A. sec. 2212(a).

[47] Art. 12, incisos (b)(7) y (b)(10), 34 L.P.R.A. sec. 2212(7) y (10).

[48] En su recurso de *certiorari*, la parte peticionaria señaló como segundo error que el Tribunal de Apelaciones había errado al determinar que el foro de instancia actuó incorrectamente cuando desestimó la queja por violación a los términos de juicio rápido. En vista de que mediante esta Opinión resolvemos que la vista de aprehensión celebrada en el caso de autos fue nula, ello significa que los términos de rápido enjuiciamiento nunca comenzaron a decursar, por lo que resulta innecesario discutir el mencionado error.

instancia. Específicamente argumenta que el Estado tenía la obligación de nombrar un defensor judicial a la menor antes de celebrar la vista de aprehensión.[49]

Por su parte, el Procurador General indica que la menor del presente caso ha estado acompañada en todo momento por un adulto interesado y consciente de los derechos que le cobijan y de las consecuencias de su renuncia a éstos. Añade que no hay duda de que "la madre [de la menor] ha fungido como persona responsable que, a pesar de la dolorosa situación que ello pueda representar, pretende buscar ayuda para su hija aunque ello acarree someterla a un proceso judicial".[50]

La situación particular que se presenta en el caso de autos se resume en que la madre de la menor es una testigo anunciada por el Estado en contra de su propia hija, testimonio para lo cual incluso prestó una declaración jurada desde el mismo inicio del proceso. Aunque no dudamos, como bien argumenta la Procuradora General —y salvaguardando claro está la presunción de inocencia que protege a la menor— que la decisión de la madre de comparecer como testigo junto a la denunciante de su hija —en el contexto de una madre responsable— fue lo mejor que pudo haber hecho, lo cierto es que tal acción finalmente la colocó del lado del acusador de su hija, en un proceso que ya hemos descrito como adversativo.

---

[49] Véase Petición de *certiorari*, págs. 1-2.

[50] Véase Alegato del Procurador General, págs. 20-21.

De manera que, en el procedimiento del Estado en contra de la menor, madre e hija tienen **intereses opuestos** produciéndose un monumental desfase en el rol tradicional de una madre y un claro conflicto. Esto es, la madre actúa en pro de los intereses del Estado, mientras la menor necesita de alguien que vele por su "vulnerabilidad y falta de madurez" ante el proceso que enfrenta en contra de ese Estado. No nos queda duda que tal circunstancia requería, conforme provee el inciso (f) del Art. 37 de la Ley de Menores, *supra*, el nombramiento de un defensor judicial para la aquí peticionaria, antes de la celebración de la vista de aprehensión.

Ante el claro conflicto entre los roles de la madre de la menor, correspondía, en primer lugar, al Procurador de Menores gestionar el cumplimiento con el requisito de la presencia de una persona idónea que acompañara a esa menor durante la vista de aprehensión, de conformidad con el Art. 37(g) de la Ley de Menores, *supra*. Así surge claramente de sus deberes conforme los citamos del texto de la propia Ley. Igualmente, las salas para atender asuntos de menores, en el ejercicio de su poder de *parens patriae* y como guardianes del proceso, también tienen el deber de detectar tal tipo de conflicto y dar fiel cumplimiento al Art. 37(g) de la Ley de Menores, *supra*, mediante el mecanismo que la propia ley provee, esto es, el Art. 37(f).

Por otro lado, el foro apelativo intermedio determinó que la menor sí estuvo adecuadamente representada durante

la vista de causa probable para presentar querella, porque contaba "con una representante legal…". En primer lugar, esas no fueron las circunstancias durante la vista de aprehensión, pues la menor compareció sin abogado y, como ya determinamos, su madre sufría de un claro conflicto que le impedía acompañarla en el proceso. Pero, con relación a lo acontecido en la vista de causa probable para presentar querella, es menester aclarar, como ya habíamos dejado entrever, que **el derecho de un menor a gozar de representación legal durante el proceso en su contra, y el requisito estatutario de la presencia de alguno de sus padres, tutor, encargado o, en su defecto, defensor judicial, son distintos e independientes**. El que un menor comparezca con representación legal a enfrentar el proceso en su contra no implica que se ha cumplido con lo dispuesto por el legislador en el Art. 37(g) de la Ley de Menores, *supra*.[51]

Por último, reiteradamente hemos dicho que las Reglas para Asuntos de Menores "siguen fundamentalmente las disposiciones de las Reglas de Procedimiento Criminal que regulan... los procedimientos criminales contra adultos".[52] Como señalamos, en el caso de autos la defensa de la peticionaria presentó su reclamo ante los foros *a quo*, basado en la Regla 6.2(2)(d) de las Reglas de Procedimiento

---

[51] A no ser, claro está, que el padre, la madre, el tutor o el encargado del menor sea a su vez su abogado.

[52] Pueblo en interés de los menores C.L.R. y A.V.L., *supra*; Pueblo en interés menor R.G.G., *supra*.

para Asuntos de Menores, *supra*, la cual dispone que "no se determinó causa probable conforme a derecho". Esta regla encuentra su equivalente en la Regla 64(p) de las Reglas de Procedimiento Criminal, 32 L.P.R.A. Ap. IV, R. 64(p), la cual en esencia provee para que un acusado pueda solicitar la desestimación del pliego acusatorio o cualquier cargo incluido en éste, cuando no se ha determinado causa probable por un juez u ordenado su detención para responder del delito con arreglo a la ley y a derecho.[53] La Regla 64(p) de las Reglas de Procedimiento Criminal, *supra*, dispone específicamente dos fundamentos para solicitar la desestimación de la acusación o la denuncia: que la determinación de causa se hizo ante ausencia total de prueba <u>o por infringir los requisitos o derechos procesales que se deben observar en la vista</u>.[54]

Recientemente, interpretando los efectos de una desestimación bajo la Regla 64(p) de las Reglas de Procedimiento Criminal, *supra*, en <u>Pueblo v. Rivera Vázquez</u>, res. el 26 de enero de 2010, 2010 T.S.P.R. 8, 177 D.P.R. ___, advertimos la existencia de defectos "insubsanables" en el proceso que no permiten su corrección mediante una enmienda al pliego acusatorio o por la continuación del trámite tras la presentación de una nueva denuncia o acusación. En esa ocasión señalamos que si la vista "no se celebró de acuerdo con el procedimiento dispuesto en

---

[53] <u>Pueblo v. Rivera Vázquez</u>, res. el 26 de enero de 2010, 2010 T.S.P.R. 8, 177 D.P.R. ___; <u>Pueblo v. Jiménez Cruz</u>, 145 D.P.R. 803, 815 (1998).

[54] <u>Pueblo v. Rivera Vázquez</u>, *supra*.

nuestro ordenamiento procesal penal o de que no se cumplió con alguna garantía inherente a éste, entonces se debe celebrar una vista... en sustitución de la vista 'anulada'".[55]

Considerando que la vista de aprehensión contra la peticionaria no se celebró conforme a los requerimientos o derechos procesales que dispone nuestro ordenamiento procesal para asuntos de menores, corresponde la anulación de ésta y la celebración de una nueva vista de aprehensión.

Por los fundamentos antes expuestos, se revoca la sentencia emitida por el Tribunal de Apelaciones, se modifica la emitida por el Tribunal de Primera Instancia y así modificada, se confirma. Se anula la vista de aprehensión celebrada en el caso de autos y se devuelve el caso al tribunal de instancia para la continuación de los procedimientos en consonancia con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[55] Íd.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

    v.                             CC-2007-681         Certiorari

En Interés de la Menor
C.Y.C.G.

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 5 de enero de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia emitida por el Tribunal de Apelaciones, se modifica la emitida por el Tribunal de Primera Instancia y así modificada, se confirma. Se anula la vista de aprehensión celebrada en el caso de autos y se devuelve el caso al tribunal de instancia para la continuación de los procedimientos en consonancia con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo